**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 22-13277

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

ROLEX BRYAN BRUNO,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cr-20418-JLK-1

_____

Before ROSENBAUM, BRANCH, and KIDD, Circuit Judges.

PER CURIAM:

Rolex Bryan Bruno went to trial on carjacking and firearms charges. During the trial, the jury reported that it was deadlocked. The district court responded by delivering an *Allen* charge that deviated substantially from the pattern instruction. In particular, the

district court failed to inform the jurors that they need not give up their honest beliefs. We find that this was plain error.

After the district court's *Allen* charge, the jury returned a split verdict, finding Bruno guilty of carjacking but acquitting him of the firearms count. We now vacate Bruno's conviction and remand his case for a new trial on the carjacking count.

## I.     BACKGROUND

On April 21, 2022, Bruno was charged with two offenses: (1) carjacking, in violation of 18 U.S.C. § 2119(1) ("Count One"); and (2) brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) ("Count Two"). Bruno proceeded to trial.

After the close of evidence and final jury instructions, the jury began its deliberations. On the second day of deliberations, the jury sent the district court a note: "On Count 1, The Jury is Hung." The district court then began discussing with the lawyers, outside the presence of the jurors, the possibility of giving an *Allen* charge and asked its law clerk if the clerk could "find the *Allen* Charge." The district court then asked the parties:

> Before I give them an Allen Charge, though, this is so early into these proceedings, I can have just a discussion with them from me, based on my experience and having talked to over a thousand jurors, to tell them that this is an important case, important to all parties, give them a general discussion to urge them to keep trying or I can read the language of the Allen Charge

> if we can find it; or do all of you want to say, okay,
> you're hung up, good-bye, and we'll pick a new jury
> tomorrow morning.

The government said that it would accept the hung jury. Bruno asked for a few minutes to consult with his counsel's office. Despite this request, the district court stated that "[i]t is my decision that to keep from wasting these people's time on the jury . . . we're going to have to do whatever we do to get out of this courtroom and this courthouse" by no later than 3:00 p.m. that day due to an upcoming corporate run where the court was located. The law clerk then returned with "the model instructions," which the clerk had retrieved from the internet.

The district court ruled that it would give the jury the *Allen* charge. [*Id.*] The defense "object[ed] to the Allen Charge." The government reiterated that it accepted a hung jury and requested that the case be reset for trial. The district court overruled those objections and brought the jury back in.

The district court asked if the jury had selected a foreperson, and the foreperson identified himself. The district court then proceeded:

> In your question to the Court stating that you are
> hung, I am interpreting that to mean that you are hav-
> ing difficulty in filling out the Verdict Form which has

three numbered questions,[1] and when you say, "On Count 1 the jury is hung," I'm going to ask -- I know the lawyers are all objecting to what I'm doing, but I'm going to ask – I'm going to tell you what my assumption is of what you are asking me about, if it's correct, and I want the foreperson to look around and tell me yes or no if I'm correct. If your answer is, yes, my analysis is correct, then I'll go on. If anybody objects, I will stop at that point. This is so everybody knows what we're doing.

There are three questions on the Verdict Form which the jury has had. My assumption is that you're saying we are hung on the first question on the form jury verdict that you gave us, Judge, to talk about, and that you are not referring to the other questions on this Verdict Form.

Is that what the jury, in saying "we are hung" you meant to say? When you talk about Count 1, you're talking about question 1, am I correct?

---

[1] The verdict form contained three questions: (1) whether the jury found Bruno guilty or not guilty as to Count One; (2) whether the jury found Bruno guilty or not guilty as to Count Two by either (a) using or carrying a firearm during and in relation to a crime of violence or (b) knowingly possessing a firearm in furtherance of a crime of violence; and (3) whether the jury found Bruno guilty or not guilty of brandishing a firearm during and in relation to the crime of violence charged in Count One. The verdict form instructed the jury to find Bruno not guilty as to Count Two if they determined him not guilty as to Count One.

22-13277               Opinion of the Court                       5

The foreman answered "yes." The district court inquired further, asking the jury to confirm that it was not referring to "questions 2 and 3." The foreman answered again, "Yes." The district court stated, "All right. With that assumption in mind, I will ask you to step back into the jury room." The court continued outside the presence of the jury:

> It is my judgment that what they're saying here is that they're not hung on this jury. They're not hung on the total of the jury Verdict Form. They are, in their words, and they use the only language they know, hung on question 1. I was going to suggest that, therefore, I give the Allen Charge and explain to them that there are three parts to the Verdict Form, so that if they ever are hung, they have to be hung on the whole jury. They can't be hung on just one or two.
>
> . . . .
>
> Now, I wanted the opportunity to explain to you and to the record why we're doing what we're doing. I think that I call them in and tell them that they have to answer all three; that if they want to have a hung jury, it's got to be on everything or nothing, and tell them the elements of the Allen Charge. That's what I'm going to do.

When the district court asked the parties for their positions, the defense stated that it would like the jury to continue deliberations and only objected to "the Allen charge as premature at this point." The government agreed and asked that the jury continue

to deliberate. The jury re-entered the courtroom. The district court stated:

> The Court now makes the following ruling and will tell you why: The Court rules that its interpretation of the note that was sent out, the last note about being hung, is not really -- as I interpreted it, is you are not hung. You have answered, you've done the best you can to bring my attention to a serious problem you are having with Question Number 1 of the Verdict Form. That's my interpretation. That is to say that what you're telling me is that Number 1, Question Number 1, is causing confusion and problems that you would like some assistance with, and I'm going to do that now and give you that assistance which, I apologize, I should have done earlier on the other question.
>
> Count Number 1 says: "1: We, the jury, in the above-captioned case, unanimously find the defendant, Rolex Bryan Bruno, guilty, not guilty." There's a blank space.
>
> Then the note there tells you what to do depending on your verdict on Count 1. I'll repeat that. The note that I'm about to read you tells you what to do.
>
> The first thing you do is to decide among yourselves Count 1. You fill in one blank or the other, whatever is your unanimous verdict. I'm not implying how you fill it out. You fill out either guilty or not guilty. Then, after you have done that, you can talk about anything

you want to talk about, but when that Number 1 is filled out with either guilty or not guilty, or if you can't reach a verdict, you say we can't reach one, we're hung. That's being hung.

The district court then said that it "believe[d] and hope[d]" that the jury could reach a unanimous verdict. It continued:

Now, I want you to go back in there and resume your discussions with a full elaboration of the procedure, and believe me, that procedure is complicated, too.

. . . .

If you cannot, and you've discussed it thoroughly with the procedure in mind now, what we're doing, and you just can't reach a verdict after a reasonable time, usually several hours or several days, whatever, then you tell me that you are hung or you write it out, I discuss it with the lawyers and we get to that point.

The foreman responded, "[W]e've discussed pretty much every point on the case, and I don't believe we're coming to any conclusion on any of the counts." The district court then gave the following nonpattern *Allen* charge:

Well, you haven't given it this one last try and you can come back tomorrow. I mean you have the ability to come back tomorrow.

You may talk right now and say what you've just said, Judge, we don't think it will do any good and you'll tell me that in five minutes, but anything that

8                    Opinion of the Court                22-13277

happens, you know I'm going to get you out of here by 1:30 today.

So I ask you to give it that five minute, 10-minute talk and see if you feel truly you're hung or if you believe that if -- because I'm asking you to under something called the Allen Charge to tell you that these cases, it is desirable to have them concluded because a hung jury doesn't mean the end of the case. It means the end of this jury having anything to do with the case, but we try it all over again with another 12 people and the case goes on. It doesn't end the case, except it is up to the Court -- up to the Government to move for that process. I'm assuming that they would do that. One of the options is if they - - pardon me. In my experience in trying over 6,000 cases, it doesn't mean the end of the case. I do tell you that as part of the Allen Charge.

So that's where we are. If by coming back in the morning and talking a few more hours, you think you can reach a verdict, and you don't mind doing that, that's desirable. It takes care of -- hopefully it takes care of the problems of the Corporate Run, the Allen Charge and we've done our best to try to reach a verdict so that we have conclusion of the whole case. Otherwise, we simply have to try it over again when the Government comes back and says, yeah, we're going to keep going. We try it again and we try it to another whole group of new people with the same process, and it would take the same four to five days to do it again.

> All right. You go in the jury room and let me know, unless -- do you all want to -- I don't want you to have to talk here in open court or anything. All right. Go to the jury room and let me know what you wish to do in 5 or 10 minutes.

This *Allen* charge did not match our Court's Pattern Jury Instructions. *See* 11th Cir. Pattern Jury Instructions (Criminal Cases) T5 (2022). The jury returned to their deliberations at 11:27 a.m. Bruno's counsel stated that, "if they come back out again and say they still haven't reached a verdict, [his] position is still that they haven't been deliberating long enough." Bruno did not object to the content of the *Allen* charge.

At 1:25 p.m., the jury notified the district court that they had reached a verdict. The jury found Bruno guilty on Count One and not guilty on Count Two. The district court polled the jury and confirmed its verdict.

Bruno timely appealed his conviction and sentence.

## II.    STANDARD OF REVIEW

We generally review a challenge to an *Allen* charge for an abuse of discretion. *United States v. Bush*, 727 F.3d 1308, 1320 n.6 (11th Cir. 2013). However, we review the district court's decision to give an *Allen* charge only for plain error where the defendant argues for the first time on appeal that the language of the charge was impermissibly coercive. *United States v. Anderson*, 1 F.4th 1244, 1268 (11th Cir. 2021).

Bruno argues that we should review his challenge to the *Allen* charge for an abuse of discretion because he objected to the giving of the *Allen* charge both generally and on the specific basis that giving the charge would be premature. But he did not raise any objection as to the coercive nature of the charge or to the content of the charge after the district court gave it, which our precedent requires. *United States v. Hill*, 99 F.4th 1289, 1308 (11th Cir. 2024) ("But when a defendant does not object to the contents of th[e *Allen*] charge, we review for plain error."). Therefore, our review is only for plain error.

"Plain error occurs when (1) there was an error, (2) the error was plain or obvious, (3) the error affected the defendant's substantial rights, and (4) the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Anderson*, 1 F.4th at 1268–69. "In order for an error to be obvious for purposes of plain error review, it must be plain under controlling precedent or in view of the unequivocally clear words of a statute or rule." *United States v. Johnson*, 694 F.3d 1192, 1195 (11th Cir. 2012) (citation modified). In other words, "[f]or an error to be plain, the issue must be specifically resolved by . . . precedent from this Court or the Supreme Court." *United States v. Cenephat*, 115 F.4th 1359, 1368 (11th Cir. 2024) (per curiam). "As to the third [element], an error affects a defendant's substantial rights if it affects the outcome of the district court proceedings.'" *Hill*, 99 F.4th at 1312. Only if the defendant can prove the first three elements does the Court have the discretion to correct the error. *Id.*

## III.    DISCUSSION

*Allen* charges carry the risk of coercing jurors in the minority to change their votes to align with the majority. *Rubinstein v. Yehuda*, 38 F.4th 982, 996 (11th Cir. 2022). Although district courts have broad discretion in issuing an *Allen* charge, they must take care to not "coerce any juror to give up an honest belief." *Anderson*, 1 F.4th at 1269 (citation modified).

We have approved our pattern *Allen* instruction on numerous occasions. *United States v. Woodard*, 531 F.3d 1352, 1364 (11th Cir. 2008); *see* 11th Cir. Pattern Jury Instructions (Criminal Cases) T5 (2022). Because of the *Allen* charge's potential coercive effect, "close scrutiny is demanded of any modification of the accepted language." *United States v. Alonso*, 740 F.2d 862, 878 (11th Cir. 1984); *see also United States v. Amaya*, 509 F.2d 8, 12–13 (11th Cir. 1975) (noting "the almost impossible task" imposed on appellate courts in reviewing the prejudicial impact of variations from the approved *Allen* charge (citation modified)); *United States v. Cheramie*, 520 F.2d 325, 330 (5th Cir. 1975) (recognizing that when the trial judge strays from the pattern *Allen* charge, "this Court unflinchingly acts to correct the error").

> In pertinent part, our approved *Allen* charge states:
>
> If a substantial majority of you are in favor of a conviction, those of you who disagree should reconsider whether your doubt is a reasonable one since it appears to make no effective impression upon the minds of the others. On the other hand, if a majority or even a smaller number of you are in favor of an acquittal,

12                    Opinion of the Court                    22-13277

the rest of you should ask yourselves again – and most thoughtfully – whether you should accept the weight and sufficiency of evidence that fails to convince your fellow jurors beyond a reasonable doubt.

Remember at all times that no juror is expected to give up an honest belief about the weight and effect of the evidence. But after fully considering the evidence in the case you must agree upon a verdict if you can.

*See* 11th Cir. Pattern Jury Instructions (Criminal Cases) T5 (2022).

Neither party disputes that the district court deviated from the pattern *Allen* charge. And specifically, Bruno argues that the district court's failure to tell the jury that no juror was expected to give up an honest belief about the weight and effect of the evidence, or any language to that effect, was error. We agree.

*United States v. Scruggs*, 583 F.2d 238 (5th Cir. 1978),[2] makes this error plain. There, the defendant challenged the giving of the pattern *Allen* charge. *Id.* at 239–40. In affirming that the pattern *Allen* charge is permissible within this Circuit, we stated, "We require trial judges, *when giving any version of* Allen, to make it clear to each juror that he must conscientiously adhere to his or her own honest opinion . . . .'" *Id.* at 241 (emphasis added). Accordingly, a district

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

court *must* tell the jury that a juror need not give up their honest belief when delivering *any Allen* charge.

We must now determine whether the error affected Bruno's substantial rights. *Hill*, 99 F.4th at 1312. Bruno argues that the jury's split verdict, in which the jury acquitted him of both (a) using or carrying a firearm during and in relation to a crime of violence, and (b) knowingly possessing a firearm in furtherance of a crime of violence, while convicting him of carjacking, confirms that the jury was coerced by the *Allen* charge. Bruno contends that the government did not offer an alternative theory or evidence that Bruno committed the carjacking without a weapon.

We held in *United States v. Demarest*, 570 F.3d 1232, 1243 (11th Cir. 2009), that a split verdict does not necessarily establish that the pattern *Allen* charge is coercive. But the district court here did not give the pattern *Allen* charge. And given the inconsistency between Bruno's conviction on the carjacking count and his acquittal on the firearms count after the deadlocked jury received the improper *Allen* charge, we find that Bruno has demonstrated that a plain error affected his substantial rights. In our discretion, we find it necessary to correct the error and will vacate Bruno's conviction.

Because the district court's error in administering the *Allen* charge requires us to vacate Bruno's conviction, we need not address Bruno's challenge to his sentence.

## IV.    CONCLUSION

We **VACATE** Bruno's conviction and **REMAND** for a new trial on Count One of the superseding indictment, for carjacking.

22-13277                BRANCH, J., Dissenting.                1

BRANCH, J., dissenting.

Rolex Bruno appeals his conviction and sentence for federal carjacking. The majority vacates his conviction, concluding that the district court's *Allen*[1] charge during the trial was plainly erroneous and inherently coercive because it failed to inform the jurors that they need not give up their honest beliefs. However, when the totality of the circumstances are considered, the jury was informed that it was not required to give up its honest beliefs about the evidence and there is simply no concern that the court's instruction would have coerced a juror otherwise. Moreover, neither the Supreme Court nor this Court has ever held that the honest belief instruction *must* be included in an *Allen* charge or that the absence of this information necessarily renders the charge inherently coercive. For these reasons, I respectfully dissent.

## I.    Background

A grand jury returned a two-count superseding indictment charging Bruno with (1) carjacking, in violation of 18 U.S.C. §§ 2119(1) and 2 (Count 1); and (2) using or carrying and possessing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count 2). Bruno pleaded not guilty and proceeded to trial.

---

[1] *Allen v. United States*, 164 U.S. 492, 501–02 (1896) (holding that a trial court may instruct a deadlocked jury to keep deliberating).

2                    BRANCH, J., Dissenting.                    22-13277

Following presentation of the evidence, the district court read the instructions to the jury. These instructions included the following:

> Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you should discuss the case, must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and if you become convinced that you were wrong, change your mind. But don't give up your honest beliefs just because others think differently or because you simply want to end the discussions and get the case over with.

The district court then read the verdict form, which it described as "a little bit complicated." The verdict form contained three questions: (1) whether the jury found Bruno guilty of carjacking (Count 1); (2) whether the jury found Bruno guilty of Count 2 by either (a) using or carrying a firearm during and in relation to the carjacking or (b) knowingly possessing a firearm in furtherance of the carjacking; and (3) whether the jury found that Bruno brandished a firearm during and in relation to the carjacking.[2] The verdict form instructed the jury to find Bruno not guilty of Count 2 if it

---

[2] The verdict form included a question about whether Bruno brandished the firearm because § 924(c) provides for an increased mandatory minimum sentence of 7 years if the defendant brandished a firearm during and in relation to the crime of violence. *See* 18 U.S.C. § 924(c)(1)(A)(ii).

22-13277                BRANCH, J., Dissenting.                3

determined he was not guilty of Count 1.  The jury began its deliberations at 3:06 p.m.

At approximately 4:55 p.m., the district court received the following questions from the jury.

[1] If we decide the defendant is not guilty, is he free?

[2] Did police interview the man lawn mowing (who let them call mom), and if so, did he hear a gun shot?[3]

[3] Differen[ce] of/between car thief and car jacking

[4] #4 of Count 1 need clear up[4]

---

[3] The victims of the carjacking testified at trial that after the carjacking, they ran to a nearby house where a man was outside mowing the lawn, and the man let them use his phone.

[4] The jury attached to their note the jury instructions for the elements of carjacking, which provided that:

The Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:

(1)    the Defendant took a motor vehicle from or in the presence of another;

(2)    the Defendant did so by force and violence;

(3)    the motor vehicle had previously been transported, shipped, or received in interstate or foreign commerce; and

4                    BRANCH, J., Dissenting.                    22-13277

The district court called the jury back in and explained that because it was late and it needed time to discuss the posed questions with the parties' lawyers, it was inclined to release the jurors for the day and reconvene the next morning. It then asked the jurors whether they would prefer to stay and keep deliberating or recess and return the next morning. The court further advised that it would reconvene the next day from only 9:00 a.m. to 12:00 p.m. because of a "Corporate Run"[5] near the courthouse the next day, which would create traffic problems. The court cautioned that, even though it would be a shortened court session the next day, there would be "no pressure on anybody to do it in three hours. If it takes longer, it takes longer." The jury expressed a preference for recessing and returning the next day, and the court released them for the day.

The court then discussed the jury's questions with the parties' lawyers and decided to answer them as follows. Concerning the first, third, and fourth question, the court referred the jury to the jury instructions. Concerning the second question, the court responded: "[Y]ou will have to rely on your memory of the testimony."

---

(4)     the Defendant intended to cause death or serious bodily harm when the Defendant took the motor vehicle.

The jury circled element 4 as the instruction on which it needed clarification.

[5] Context in the record indicates that the Corporate Run was a local race in the area.

22-13277                    BRANCH, J., Dissenting.                    5

The jury resumed deliberations the next morning at 9:00 a.m. At 10:05 a.m., the jury sent a note to the court, stating that "[o]n Count 1 the jury is hung." The district court judge noted that the jury's note "doesn't surprise me" because the answers the parties agreed to provide to the jury's prior questions were not helpful. The district court explained that "normally," in this situation, it would give the jury an *Allen* charge, and the court directed a law clerk to "find the *Allen* charge." The district court then stated:

> Before I give them an *Allen* Charge, though, this is so early into these proceedings, I can have just a discussion with them from me, based on my experience and having talked to over a thousand jurors, to tell them that this is an important case, important to all parties, give them a general discussion to urge them to keep trying or I can read the language of the *Allen* Charge if we can find it; or do all of you want to say, okay, you're hung up, good-bye, and we'll pick a new jury tomorrow morning.

The government stated that it "would accept a hung jury and request that we pick a new jury." Bruno's counsel asked for a few minutes to consult with their office, but the district court stated that it had decided to give the *Allen* charge. The law clerk then returned with "the model" *Allen* charge instruction. Both parties objected to the court's decision to give the charge.

The district court called the jury back in and stated:

> In your question to the Court stating that you are hung, I am interpreting that to mean that you are

6                    BRANCH, J., Dissenting.                    22-13277

> having difficulty in filling out the Verdict Form which
> has three numbered questions, and when you say,
> "On Count 1 the jury is hung," I'm going to ask—I
> know the lawyers are all objecting to what I'm doing,
> but I'm going to ask—I'm going to tell you what my
> assumption is of what you are asking me about, if it's
> correct, and I want the foreperson to look around and
> tell me yes or no if I'm correct. If your answer is, yes,
> my analysis is correct, then I'll go on. If anybody ob-
> jects, I will stop at that point. This is so everybody
> knows what we're doing.
>
> There are three questions on the Verdict Form which
> the jury has had. My assumption is that you're saying
> we are hung on the first question on the form jury
> verdict that you gave us, Judge, to talk about, and that
> you are not referring to the other questions on this
> Verdict Form.
>
> Is that what the jury, in saying "we are hung" you
> meant to say? When you talk about Count 1, you're
> talking about question 1, am I correct?

The jury foreman answered "yes." The district court inquired fur-
ther, asking the jury to confirm that it was not referring to "ques-
tions 2 and 3." The foreman answered again, "Yes." The district
court stated, "All right. With that assumption in mind, I will ask
you to step back into the jury room" for a moment, so that the
court could confer with the parties.

After the jury stepped out, the district court explained to the
parties that

22-13277                    BRANCH, J., Dissenting.                    7

It is my judgment that what they're saying here is that they're not hung on this jury.  They're not hung on the total of the jury Verdict Form.  They are, in their words, and they use the only language they know, hung on question 1.  I was going to suggest that, therefore, I give the *Allen* Charge and explain to them that there are three parts to the Verdict Form, so that if they ever are hung, they have to be hung on the whole jury.  They can't be hung on just one or two.

And we are not going to waste four days of trial in this time without making an effort to get the jury to reach a conclusion, yes or no, on hung on all of the questions. . . .

Now, I wanted the opportunity to explain to you and to the record why we're doing what we're doing.  I think that I call them in and tell them that they have to answer all three; that if they want to have a hung jury, it's got to be on everything or nothing, and tell them the elements of the *Allen* Charge.  That's what I'm going to do.

The district court then gave the government and the defense a chance to comment, propose modifications, or otherwise voice objections to the proposed plan.  Bruno's counsel stated that they "would like for the jury to continue deliberations," but they objected to the *Allen* charge as "premature" at that point in the deliberations.  The government stated that it "agree[d] and would ask that the jury continue to deliberate."

8                      BRANCH, J., Dissenting.                  22-13277

The district court called the jury back in and stated as follows:

> The Court now makes the following ruling and will tell you why: The Court rules that its interpretation of the note that was sent out, the last note about being hung, is not really—as I interpreted it, is you are not hung.  You have answered, you've done the best you can to bring my attention to a serious problem you are having with Question Number 1 of the Verdict Form.  That's my interpretation.  That is to say that what you're telling me is that Number 1, Question Number 1, is causing confusion and problems that you would like some assistance with, and I'm going to do that now and give you that assistance which, I apologize, I should have done earlier on the other question.
>
> Count Number 1 says: "1: We, the jury, in the above-captioned case, unanimously find the defendant, Rolex Bryan Bruno, guilty, not guilty."  There's a blank space.
>
> Then the note there tells you what to do depending on your verdict on Count 1.  I'll repeat that.  The note that I'm about to read you tells you what to do.
>
> The first thing you do is to decide among yourselves Count 1.  You fill in one blank or the other, whatever is your unanimous verdict.  I'm not implying how you fill it out.  You fill out either guilty or not guilty.  Then, after you have done that, you can talk about anything

22-13277                BRANCH, J., Dissenting.                9

> you want to talk about, but when that Number 1 is filled out with either guilty or not guilty, or if you can't reach a verdict, you say we can't reach one, we're hung. That's being hung.

The district court then said that it "believe[d] and hope[d]" that the jury could reach a unanimous verdict. It continued:

> Now, I want you to go back in there and resume your discussions with a full elaboration of the procedure . . . .

> Now, when you go out, you discuss it further, I urge you to discuss it further, and I'm going to talk to you about the Corporate Run. I know that's a problem. You all know what I'm talking about. Okay. But I'm going to ask you, on behalf of being able to finish this trial, to be able to reach a verdict on that Count 1, one way or the other, and then whatever it is, follow the procedure.

> If you cannot, and you've discussed it thoroughly with the procedure in mind now, what we're doing, and you just can't reach a verdict after a reasonable time, usually several hours or several days, whatever, then you tell me that you are hung or you write it out, I discuss it with the lawyers and we get to that point.

The foreman responded, "[W]e've discussed pretty much every point on the case, and I don't believe we're coming to any conclusion on any of the counts." The district court then gave the following non-pattern *Allen* charge:

Well, you haven't given it this one last try and you can come back tomorrow. I mean you have the ability to come back tomorrow.

You may talk right now and say what you've just said, Judge, we don't think it will do any good and you'll tell me that in five minutes, but anything that happens, you know I'm going to get you out of here by 1:30 today.

So I ask you to give it that five minute, 10-minute talk and see if you feel truly you're hung or if you believe that if—because I'm asking you to under something called the *Allen* Charge to tell you that these cases, it is desirable to have them concluded because a hung jury doesn't mean the end of the case. It means the end of this jury having anything to do with the case, but we try it all over again with another 12 people and the case goes on. It doesn't end the case, except it is up to the Court—up to the Government to move for that process. I'm assuming that they would do that. One of the options is if they—pardon me. In my experience in trying over 6,000 cases, it doesn't mean the end of the case. I do tell you that as part of the *Allen* Charge.

So that's where we are. If by coming back in the morning and talking a few more hours, you think you can reach a verdict, and you don't mind doing that, that's desirable. It takes care of—hopefully it takes care of the problems of the Corporate Run, the *Allen* Charge and we've done our best to try to reach a

22-13277                BRANCH, J., Dissenting.                11

verdict so that we have conclusion of the whole case. Otherwise, we simply have to try it over again when the Government comes back and says, yeah, we're going to keep going. We try it again and we try it to another whole group of new people with the same process, and it would take the same four to five days to do it again.

All right. You go in the jury room and let me know, unless—do you all want to—I don't want you to have to talk here in open court or anything. All right. Go to the jury room and let me know what you wish to do in 5 or 10 minutes.

Neither the government nor Bruno objected to the language of the charge.[6] The jury then returned to their deliberations at approximately 11:27 a.m.

Around 1 p.m., the district court informed the parties that it intended to send back a memorandum to the jury asking for the jury's preference as to the following options:

1: Recess at 1:00 for one hour lunch break, return and deliberate until 2:00 and then recess until 9:00 a.m. tomorrow morning for continued deliberations?

---

[6] I agree with the majority that the district court's instruction did not match our Court's pattern *Allen* charge. *See* Eleventh Circuit Pattern Jury Instructions (Criminal Cases) T5 (2025).

12                    BRANCH, J., Dissenting.                    22-13277

> 2: Eliminate the lunch break and recess no later than 1:30, to return tomorrow morning at 9:00 a.m. for continued deliberations?
>
> 3: Continue deliberations until no later than 3:00 p.m. given the Marshal's notification to the Court that the Court should start closing to avoid massive numbers of people arriving in the area for the Corporate Run at 6:30 and return tomorrow morning at 9:00 a.m. for deliberations?
>
> 4: Any other suggestions or procedure under these unusual circumstances?

The jurors selected option 3. The jury returned a verdict shortly thereafter at 1:25 p.m., finding Bruno guilty of Count 1 and not guilty of Count 2. The district court polled the jury and confirmed its verdict. This appeal followed.

## II.    Discussion

For the first time on appeal, Bruno argues that the language of the *Allen* charge was "shockingly coercive" because (1) the district court failed to instruct the jurors that they must not give up their honest beliefs about the evidence; (2) the district court failed to re-instruct the jurors that the prosecution bore the burden to prove its case beyond a reasonable doubt; (3) the court repeatedly told the jury that it was not hung; (4) the court expressed its personal preference that the jury reach a verdict; and (5) the court rushed the jury to reach a verdict by repeatedly reminding them of the pending Corporate Run.

22-13277                BRANCH, J., Dissenting.                    13

I agree with the majority that we review this claim for plain error because Bruno did not object to the language of the charge below. *See United States v. Hill*, 99 F.4th 1289, 1312 (11th Cir. 2024) ("Because [the defendant] failed to object to the contents of the *Allen* charge (either as written or read), we review for plain error."), *cert. denied*, 145 S. Ct. 2698 (2025). To succeed on a claim under plain error review, Bruno "must prove that (1) error occurred, (2) that error was plain, and (3) it affected [his] substantial rights." *Id.* "Only if [Bruno] can satisfy all three prongs do we then have discretion to correct the error if it (4) seriously affected the fairness of the judicial proceedings." *Id.* (quotations omitted). "Where the explicit language of statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003).

"The Supreme Court held long ago that a trial court may instruct a deadlocked jury to keep deliberating," and this instruction is known as an *Allen* charge. *See United States v. Davis*, 779 F.3d 1305, 1312 (11th Cir. 2015) (citing *Allen*, 164 U.S. at 501–02). Although we have acknowledged that there is potential for coercion in an *Allen* charge, we have historically approved the use of the charge "as long as the district court does not coerce any juror to give up an honest belief." *Rubinstein v. Yehuda*, 38 F.4th 982, 996 (11th Cir. 2022) (quotations omitted). To determine whether a charge was inherently coercive, we look at "the language of the charge and the totality of the circumstances under which it was delivered." *United States v. Woodard*, 531 F.3d 1352, 1364 (11th Cir.

14                    BRANCH, J., Dissenting.                    22-13277

2008); *see also Lowenfield v. Phelps*, 484 U.S. 231, 237 (1988) (explaining that when evaluating a contention "that the jury was improperly coerced" a court must "consider the supplemental charge given by the trial court in its context and under all the circumstances" (quotations omitted)).

To aid courts in giving *Allen* charges, we have approved of a pattern instruction. This pattern instruction provides, in relevant part,

> If a substantial majority of you are in favor of a conviction, those of you who disagree should reconsider whether your doubt is a reasonable one since it appears to make no effective impression upon the minds of the others. On the other hand, if a majority or even a smaller number of you are in favor of an acquittal, the rest of you should ask yourselves again—and most thoughtfully—whether you should accept the weight and sufficiency of evidence that fails to convince your fellow jurors beyond a reasonable doubt.

> Remember at all times that no juror is expected to give up an honest belief about the weight and effect of the evidence. But after fully considering the evidence in the case you must agree upon a verdict if you can.

*See* Eleventh Circuit Pattern Jury Instructions (Criminal Cases) T5 (2025). It is undisputed that this pattern "honest belief" instruction was not part of the district court's *Allen* charge in this case.

22-13277                    BRANCH, J., Dissenting.                    15

Nevertheless, the absence of the honest belief instruction did not render the *Allen* charge plainly erroneous.

There is always concern that when the district court gives an *Allen* charge, "a substantial danger of prejudice results from the possibility that jurors will surrender conscientiously held beliefs in order to accommodate pressure from the bench." *United States v. Cheramie*, 520 F.2d 325, 329 (5th Cir. 1975).[7] The concern that the jury may feel pressured "usually arises from the language of the charge which, among other things, may suggest that the minority should reconsider its views, that a verdict should issue within a short period of time, or even that some jurors are misbehaving by refusing to join in an otherwise unanimous decision." *Id.* at 329– 30. Undoubtedly, the pattern instruction's admonition that "no juror is expected to give up an honest belief about the weight and effect of the evidence" helps alleviate some of the pressure concerns inherent in the *Allen* charge itself. *See* Eleventh Circuit Pattern Jury Instructions (Criminal Cases) T5 (2025); *see United States v. Prentiss*, 446 F.2d 923, 925 (5th Cir. 1971) (rejecting a claim that an *Allen* charge was coercive because "the trial court specifically admonished each member of the jury not to surrender his or her conscientious convictions"). Thus, where, as here, the district court has deviated from the pattern instruction, we must closely scrutinize "the language employed and the language's impact, under the

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

16                    BRANCH, J., Dissenting.                    22-13277

circumstances," on the jury. *United States v. Alonso*, 740 F.2d 862, 878 (11th Cir. 1984) (quotations omitted).

When examining an *Allen* charge's language, the Supreme Court has instructed us to not evaluate a supplemental charge in isolation, but instead to view it "in its context and under all the circumstances." *Lowenfield*, 484 U.S. at 237; *United States v. Grow*, 977 F.3d 1310, 1329 (11th Cir. 2020) (explaining that "[c]ourts may not evaluate a single jury instruction in isolation, but must view it in light of the overall charge" and then considering as part of the analysis of an *Allen* charge challenge instructions given prior to deliberations as well as instructions given after the challenged instruction).

Here, the jury was instructed prior to deliberations that they should not "give up [their] honest beliefs just because others think differently or because you simply want to end the discussions and get the case over with," and the jury had these instructions with them in the jury room. This instruction guards against the potential coercion concerns inherent in an *Allen* charge that we articulated in *Rubinstein*. *See* 38 F.4th at 996. The district court's further instructions did not provide otherwise. Specifically, the district court's modified *Allen* charge language did not include the kind of partial or one-sided comments that might pressure a juror to give up his honest belief. *See United States v. Amaya*, 509 F.2d 8, 10–13 (5th Cir. 1975) (explaining that we consider the language employed in an *Allen* charge improper when it includes "any partial or one-sided comments" or "any verbal gliding which may plausibly be read as coercive" (quotations omitted)). The district court did

22-13277              BRANCH, J., Dissenting.              17

not instruct the jurors in the minority to reexamine their views, demand the jury reach a result, impose any improper deadlines, or suggest that the jury's failure to reach a verdict would be improper, questionable, or contrary to the juror's oath. Nor did it encourage any particular segment of the jury to specially consider the arguments and reasoning of other jurors. It merely asked the jury to "discuss it further" and to "give[] it this one last try" after which the jury could "come back tomorrow" or could immediately tell the court that it "d[id]n't think it will do any good." And the district court reminded the jury that it could stay hung.[8] Thus, given the lack of any coercive or one-sided language in the given charge, there was no need to reiterate the honest belief instruction as part of the *Allen* charge. *See Spears v. Greiner*, 459 F.3d 200, 206 (2d Cir. 2006) (rejecting bright-line rule that the honest belief instruction was a necessary component of an *Allen* charge and holding that the *Allen* charge at issue was not coercive even though it omitted the cautionary honest belief language because the charge did not urge the jurors in the minority to reconsider their position); *United States v. LaVallee*, 439 F.3d 670, 690 (10th Cir. 2006) (rejecting bright-line rule that the honest belief instruction was a necessary component of an *Allen* charge and that the absence of such an instruction renders the instruction "per se coercive" and noting that the

---

[8] I note that by telling the jury that it could remain hung, the district court arguably informed the jury, albeit implicitly, that the jurors did not have to give up their honest beliefs.

18                    BRANCH, J., Dissenting.                    22-13277

instruction "did not include any language asking jurors to reconsider their views" or "press hold-out jurors to yield to the majority position").

In sum, the record clearly demonstrates that the jury was informed that it was not required to give up its honest beliefs about the evidence prior to deliberations, and the court's modified instruction did not contain any language that would have unduly pressured or coerced a juror into giving up his honest belief. Accordingly, after considering the overall charge and the totality of the circumstances of this particular case, the absence of the honest belief admonition in the *Allen* charge itself did not render the charge plainly erroneous under our established precedent.

The majority reaches the opposite conclusion, holding that the *Allen* charge in this case was plainly erroneous because in *United States v. Scruggs*, 583 F.2d 238 (5th Cir. 1978), we held that a district court *must* tell the jury that a juror need not give up his honest belief as part of the *Allen* charge. The majority misreads *Scruggs*.

In *Scruggs*, the defendant objected at trial to the timing of the *Allen* charge "but not its content." *Id.* at 240. On appeal, even though Scruggs did not directly challenge the content of the charge and only "generally attack[ed]" the charge as being inherently coercive, we noted "[a]t the outset . . . that the content of the charge at issue [could not] seriously be questioned." *Id.* We then explained that we had upheld *Allen* charges "so long as they avoid the pitfalls of coercive deadlines, threats of marathon deliberations, or pressure for surrender of conscientiously held minority views." *Id.*

22-13277                    BRANCH, J., Dissenting.                    19

(quotations omitted).  We then stated, in passing without any con-text or legal analysis, that "[w]e require trial judges, when giving any version of *Allen*, to make it clear to each juror that he must conscientiously adhere to his or her own honest opinion, and the judge must avoid creating the impression that a juror-caused mis-trial is improper, questionable, or contrary to good conscience." *Id.* at 241 (quotations omitted).  We then found that the charge given in Scruggs's case "was well within" these parameters.  *Id.*

However, in the very next paragraph we explained that Scruggs's "main attack" was "not on the content of the charge" but on the timing of the charge and the circumstances under which it was issued.  *Id.*  Specifically, he argued that the charge was coercive because (1) it was given after only four and a half hours of deliber-ation; (2) neither counsel nor the jury had requested additional in-structions; (3) there was no indication that the jury was dead-locked; and (4) the verdict was returned a mere 48 minutes after the charge.  *Id.*  In rejecting Scruggs's claim, we explained that a trial judge does not have to wait for a request from counsel or the jury before giving an *Allen* charge and that we had upheld *Allen* charges given after only 65 minutes of deliberation where a verdict was returned 25 minutes later.  *Id.*  Thus, we held that the *sua sponte* nature of the charge and its timing did not support a conclusion that the jury was coerced in Scruggs's case.  *Id.*  In sum, our actual

20                    BRANCH, J., Dissenting.                    22-13277

holding in *Scruggs* was about the timing of an *Allen* charge and the district court's ability to issue one *sua sponte*.[9]

It is well-established that "the holding of a prior decision can reach only as far as the facts and circumstances presented to the Court in the case which produced that decision." *See United States v. Caraballo-Martinez*, 866 F.3d 1233, 1244 (11th Cir. 2017) (quotations omitted). And "[t]he holding of a case comprises both the result of the case and those portions of the opinion necessary to that result." *Id.* (quotations omitted). On the other hand, "[d]icta are those portions of an opinion that are not necessary to deciding the case then before us." *Johnson v. Sec'y, Fla. Dep't of Corr.*, 132 F.4th 1309, 1315 (11th Cir.) (quotations omitted), *cert. denied sub. nom.*, *Johnson v. Dixon*, 146 S. Ct. 314 (2025); *see also* Bryan A. Garner et al., The Law of Judicial Precedent § 4, at 46 (2016) ("Generally, a *dictum* is a statement in a judicial opinion that is unnecessary to the case's resolution."). "[R]egardless of what a court says in its opinion, the decision can hold nothing beyond the facts of that case." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010).

---

[9] Indeed, every time we have subsequently cited the *Scruggs* case in the context of an *Allen* charge claim it has been for its timing and circumstances related holding. *See, e.g.*, *Hill*, 99 F.4th at 1312; *Rubinstein*, 38 F.4th at 997; *United States v. Bush*, 727 F.3d 1308, 1321–22 (11th Cir. 2013); *United States v. Elkins*, 885 F.2d 775, 784 (11th Cir. 1989); *Alonso*, 740 F.2d at 877. We have never cited *Scruggs* for the alleged holding the majority asserts was made in *Scruggs*—that every *Allen* charge must include the admonition that the jurors are not required to give up their honest beliefs about the evidence. And, I note that Bruno himself does not rely on *Scruggs*.

22-13277               BRANCH, J., Dissenting.                21

Thus, in *Scruggs*, while we commented generally on the content of *Allen* charges, that discussion is clearly non-binding dicta because Scruggs's "main attack" concerned the timing of the charge, not its content. *Scruggs*, 583 F.2d at 241; *United States v. Files*, 63 F.4th 920, 929 (11th Cir. 2023) (explaining that "we've treated as dicta . . . legal conclusions predicated on facts that aren't actually at issue, as well as aside-like statements about irrelevant legal matters" (footnote omitted)); *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 762 (11th Cir. 2010) ("Statements in an opinion that are not fitted to the facts, or that extend further than the facts of that case, or that are not necessary to the decision of an appeal given the facts and circumstances of the case, are dicta." (quotations and citations omitted)).  In other words, *Scruggs* did not hold that an *Allen* charge must include the admonition that jurors must not give up their honest beliefs about the evidence because the presence or absence of that statement in the *Allen* charge was not the issue in *Scruggs*.  *See Edwards*, 602 F.3d at 1298 ("All statements that go beyond the facts of the case . . . are dicta.").  Accordingly, the majority errs in holding that non-binding dicta in *Scruggs* establishes plain error in Bruno's case.  *See United States v. Birge*, 830 F.3d 1229, 1232 (11th Cir. 2016) (explaining that the prior-panel-precedent rule "applies only to holdings, not dicta"); *United States v. Johnson*, 694 F.3d 1192, 1195 (11th Cir. 2012) (noting that "plain error . . . must be plain under controlling precedent" (quotations omitted)).

Without the alleged holding from *Scruggs* on which the majority relies, Bruno cannot show that plain error occurred based on the absence of the honest belief admonition from the

22                    BRANCH, J., Dissenting.                    22-13277

supplemental charge.[10] Although I agree with the majority that we have certainly endorsed the inclusion of the language that jurors must not give up their honest beliefs in an *Allen* charge as evidenced by our inclusion of that language in the pattern charge, neither this Court nor the Supreme Court has ever held that an *Allen* charge *must* include this information.[11] And "[w]here the explicit language of statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003). Accordingly, for the

---

[10] I note that when stating that *Allen* charges should include the honest belief admonition, the *Scruggs* panel cited to this Court's decision in *Thaggard v. United States*, 354 F.2d 735, 739 (5th Cir. 1965). However, the charge given in *Thaggard* modeled the pattern instruction and included the honest belief language. *See id.* at 738 n.2. So like *Scruggs*, *Thaggard* did not *hold* that a district court must explicitly include this honest belief language in the *Allen* charge because the presence or absence of that language was not the issue in *Thaggard*. Instead, our holding in *Thaggard* was based on whether the charge contained partial or one-sided comments and whether the circumstances indicated that the charge was inherently coercive. *Id.* at 739. Accordingly, to the extent Bruno relies on *Thaggard*, it does not establish plain error occurred in this case.

[11] In fact, research has revealed no case from this Court or the Supreme Court that has treated certain language or phrases as mandatory for an *Allen* charge. In fact, we recently upheld a supplemental jury instruction that did not contain the honest belief language and instructed the jury that the verdict it had returned was inconsistent and that it must reach a unanimous verdict and continue deliberations, concluding that the instruction was not coercive. *See United States v. Gatlin*, 90 F.4th 1050, 1069–70 (11th Cir. 2024), *cert denied*, 145 S. Ct. 1065 (2025).

22-13277                BRANCH, J., Dissenting.                23

above reasons, I would hold that Bruno cannot show plain error based on the omission of the honest belief language from the *Allen* charge.

But the absence of the honest belief instruction does not end the inquiry into the *Allen* charge here because—although the majority does not address these points—Bruno also argues that the *Allen* charge was coercive because (1) the district court failed to re-instruct the jurors that the prosecution bore the burden to prove its case beyond a reasonable doubt; (2) the court repeatedly told the jury that it was not hung; (3) the court expressed its personal preference that the jury reach a verdict; and (4) the court rushed the jury to reach a verdict by repeatedly reminding them of the pending Corporate Run. I disagree, and would conclude that Bruno is also not entitled to relief.

Bruno does not cite to any case from this Court or the Supreme Court holding that the *Allen* charge must re-instruct the jury on the burden of proof. Thus, he cannot show plain error. *Id.* Furthermore, the jury was informed at least 10 times as part of the initial jury instructions of the government's burden, and the *Allen* charge did not contain any partial or one-sided comments that might risk shifting the burden. These circumstances undermine any concern of coercion from the absence of the burden of proof instruction in the *Allen* charge. *See United States v. Cuozzo*, 962 F.2d 945, 952 (9th Cir. 1992) (rejecting challenge that *Allen* charge was coercive because it failed to include an instruction on the burden of proof, explaining that "[w]hile it is helpful for an *Allen* charge to

24                    BRANCH, J., Dissenting.                    22-13277

include such ameliorative language, its lack does not itself neces-
sarily require reversal," and noting that the district court had "al-
ready amply instructed the jury on the burden of proof").

Similarly, the other three circumstances Bruno points to do
not demonstrate coercion. Contrary to Bruno's claim, the district
court did not repeatedly tell the jury that it was not hung. Rather,
after receiving the jury's note stating "[o]n Count 1 the jury is
hung," the district court simply sought clarification from the jury
on the note. Then, after hearing the jury's answer to the court's
inquiry, the court explained that it was interpreting the jury's note
as indicating that the jury was confused over the verdict form re-
garding Count 1, not that it was actually hung on all the counts. It
then explained how the jury should go about completing the ver-
dict form and explained what being hung was—*i.e.*, being unable
to reach a unanimous decision as to guilty or not guilty. And it
assured the jury that if, after further deliberations, the jury could
not reach a verdict, then it simply needed to come back and say it
was hung. Nothing about this explanation was coercive.

Relatedly, while the district court encouraged the jury to try
and reach a verdict, such encouragement is part of our standard
*Allen* charge and is not inherently coercive. *See* Eleventh Circuit
Pattern Jury Instructions (Criminal Cases) T5 (2025). The district
court's comments never crossed the line of personal preference,
such as by suggesting that the jury reach a particular verdict.

Finally, the district court's discussion of the Corporate Run
did not coerce or apply undue pressure on the jury to reach a

22-13277          BRANCH, J., Dissenting.                25

verdict.  The district court simply discussed a scheduling issue with the jury and reminded the jury that it could return the next day to keep deliberating if desired and take as much time as it needed. This discussion was not coercive.  *See Grow*, 977 F.3d at 1329 (concluding that the district court's discussion of and instruction on scheduling issues was not coercive).

Accordingly, for the above reasons, I would hold that, given the totality of the circumstances in this case, the *Allen* charge was not inherently coercive, and I would affirm Bruno's conviction. *Hill*, 99 F.4th at 1312.  Therefore, I respectfully dissent.